LAMSON v MARTIN (AFTER REMAND)

Docket Nos. 157051, 158966. Submitted June 6, 1995, at Lansing. Decided May 3, 1996, at 9:00 A.M.

James C. Lamson, as personal representative of the estate of Jeffrey C. Lamson, deceased, brought an action in the Oakland Circuit Court against Sherry L. Martin, seeking damages for the wrongful death of the deceased premised on the theory of social host liability. The defendant, an adult, had purchased alcohol for Shirley Jo Lund, a minor, who, while intoxicated, drove a vehicle into another vehicle, killing the plaintiff's son. Following a jury trial, the court, Jessica R. Cooper, J., awarded the plaintiff damages later reduced to zero when the trial court offset an amount that was paid to the plaintiff in a prior settlement with Lund. The plaintiff appealed, alleging error in the trial court's jury instructions. The Court of Appeals, SULLIVAN, P.J., and DOCTOROFF and REILLY, JJ., agreed with the plaintiff, reversed the order of judgment, and remanded the matter to the trial court for a new trial. 182 Mich App 233 (1990). On remand, following a jury trial, the trial court entered a judgment of no cause of action consistent with the jury's verdict and awarded attorney fees to the defendant pursuant to MCR 2.405. The plaintiff appealed (Docket No. 157051), alleging several errors, and the defendant cross appealed, alleging error in the application of the law of the case doctrine. The plaintiff also appealed (Docket No. 158966) from the award of attorney fees to the defendant. The appeals were consolidated.

After remand, the Court of Appeals held:

1. The evidence was sufficient for a reasonable jury to find that the defendant diligently inquired with regard to whether Lund was at least twenty-one years old. Diligence means devoted and painstaking application to accomplish an undertaking. Because there was conflicting evidence regarding whether Lund ran a red light, the trial court properly denied the plaintiff's motion for a directed verdict.

2. The trial court's rulings during examination of witnesses by the plaintiff's counsel and subsequent criticisms of counsel's method of direct examination did not deny the plaintiff a fair trial.

3. The trial court abused its discretion in not allowing plaintiff's counsel to ask Lund whether, in her opinion, she had appeared younger or older than her chronological age. However, the error was harmless.

4. The trial court did not err in precluding the plaintiff's counsel from cross-examining a witness where the cross-examination exceeded the scope of the direct examination of the witness.

5. The trial court did not abuse its discretion in allowing the defendant to answer questions regarding her background, because the plaintiff questioned the defendant about it first during cross-examination when he called her pursuant to the adverse witness statute. In addition, the trial court gave a standard jury instruction for the purpose of curing any prejudice.

6. The trial court properly instructed the jury with regard to the issues of foreseeability and damages.

7. The defendant's offer of judgment was for a "sum certain" under MCR 2.405(A)(1). The defendant was entitled to recover actual costs if the adjusted verdict was less than her offer. MCR 2.405(D)(2), which precludes awarding costs where an offeree fails to make a counteroffer, does not apply where, as here, each party is an offeror.

8. The trial court did not abuse its discretion in awarding the defendant attorney fees.

Affirmed.

O'CONNELL, J., concurring in the result only, wrote separately to state his concern regarding the majority's definition of the term "diligent inquiry."

1. WORDS AND PHRASES — DILIGENCE — INTOXICATING LIQUORS — DILIGENT INQUIRY.

"Diligence" means devoted and painstaking application to accomplish an undertaking; the determination whether a person who sold or furnished alcoholic liquor to a person who was less than twenty-one years of age failed to make a diligent inquiry regarding whether the person was less than twenty-one years of age is a jury question (MCL 436.33[1]; MSA 18.1004[1]).

2. WITNESSES — PHYSICAL OBSERVATIONS — OPINIONS.

Any witness is qualified to testify regarding the witness' physical observations and opinions formed as a result of them (MRE 701).

3. JUDGMENTS — COSTS — OFFERS TO STIPULATE ENTRY OF JUDGMENT.

MCR 2.405(D)(2), which precludes awarding costs where an offeree fails to make a counteroffer, does not apply where each party is an offeror.

*Brescoll & Associates, P.C.* (by *James A. Brescoll*), for the plaintiff.

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.* (by *Carl M. Riseman*), for the defendant.

AFTER REMAND

Before: Marilyn Kelly, P.J., and O'Connell and D. A. Teeple,* JJ.

Marilyn Kelly, P.J. Plaintiff appeals as of right following a verdict of no cause of action against defendant. His suit was premised on social host liability. Defendant purchased alcohol for Shirley Jo Lund, a seventeen-year-old minor. Lund, while intoxicated, drove a pickup truck into another vehicle killing plaintiff's son.

On appeal, in No. 157051, plaintiff argues that the trial court erred in denying his motion for a directed verdict on the issue of negligence. He argues that the trial court demeaned and belittled plaintiff's trial counsel and erred in refusing to allow a witness to give opinion testimony. He claims the court erred in limiting cross-examination of a key witness. He asserts that reversible error occurred when the trial court failed to give two requested instructions to the jury. Defendant cross-appealed, arguing that the law of the case doctrine was erroneously applied.

In No. 158966, plaintiff appeals from an award of attorney fees to defendant under MCR 2.405. He argues that defendant's offer of judgment was not for a sum certain as required by the court rule. Moreover, defendant never made a counteroffer, a prerequisite

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to an award. Finally, he asserts that attorney fees should not be awarded in a catastrophic damages case such as this. We affirm.

I

Plaintiff argues that the trial court erred in denying his motion for a directed verdict on the issue of negligence. He asserts that the evidence clearly established that defendant provided alcohol to Lisa Machinsky, a minor, to give to Lund without making inquiry as to their ages.

In determining whether a motion for directed verdict was erroneously denied, we review all evidence admitted until the time of the motion to determine whether a question of fact existed. We consider the evidence in the light most favorable to the nonmoving party. *Stoken v J E T Electronics & Technology, Inc*, 174 Mich App 457, 463; 436 NW2d 389 (1988). When the evidence could lead reasonable jurors to disagree, the trial court may not substitute its judgment for that of the jury. *Lester N Turner, PC v Eyde*, 182 Mich App 396, 398; 451 NW2d 644 (1990). Directed verdicts are not favored in negligence cases. *Berryman v K Mart Corp*, 193 Mich App 88, 91; 483 NW2d 642 (1992).

The liability alleged in this case was premised on MCL 436.33(1); MSA 18.1004(1), which stated at the time of the accident:

> Alcoholic liquor shall not be sold or furnished to a person unless the person has attained 21 years of age. A person who knowingly sells or furnishes alcoholic liquor to a person who is less than 21 years of age, or who fails to make diligent inquiry as to whether the person is less than 21 years of age, is guilty of a misdemeanor.

This statute applies to all persons, not just licensed establishments selling alcoholic beverages. *Longstreth v Gensel*, 423 Mich 675, 683; 377 NW2d 804 (1985). Its violation will support a prima facie case of negligence and creates a rebuttable presumption of negligence. *Id.* at 693. A defendant's lack of knowledge may be an excuse depending on the facts of the case. *Id.* at 694.

In determining whether the defendant in this case violated the statute, we must define the term "diligent inquiry." It is not defined anywhere in the statute. In a case involving "due diligence" under the dramshop statute, diligence was defined as " 'devoted and painstaking application to accomplish an undertaking.' " *Woodbeck v Curley (After Remand)*, 107 Mich App 784, 788; 310 NW2d 242 (1981), quoting Justice Levin's dissent in *People v Pearson*, 404 Mich 698, 742; 273 NW2d 856 (1979). "Due diligence" and "diligent inquiry" are separate concepts; *Woodbeck* merely defined "diligence." That definition is appropriate in this context. The furnishing of alcohol to minors is a serious matter necessitating that diligence be defined in a manner that will not dilute the statute's purpose. However, whether a diligent inquiry has been undertaken is a jury question that necessarily depends on the facts of each case.

Viewed most favorably to defendant, the evidence was sufficient here for a reasonable jury to find that defendant diligently inquired as to whether Lund was at least twenty-one years old. On the date of the accident, Lund and defendant were employed at Howe's Lanes, a bowling alley. They had worked together approximately six times over a three week period. At approximately 5:00 P.M., Lund, who was beginning her

shift, asked defendant, who was finishing hers, to purchase liquor for her.

Defendant asked Lund why she needed someone to purchase the liquor. Lund responded that she was working late and would not be able to get to the store before it closed. Defendant accepted the explanation and purchased the liquor. At trial, she admitted that she did not directly ask Lund how old she was. She testified that Lund acted like a mature individual, and there was no reason to assume she was under age. We find that a jury could conclude that defendant made a diligent inquiry about Lund's age when she asked for an explanation as to why Lund could not purchase the alcohol herself.

Plaintiff argues that the trial court erred in failing to direct a verdict on the issue of Lund's negligence. There was conflicting evidence concerning whether Lund ran a red light. Therefore, the trial court properly denied plaintiff's motion for a directed verdict. *Stoken, supra; Eyde, supra.*

II

Plaintiff argues that he was denied a fair trial where the trial court demeaned his counsel and belittled his ability to properly examine witnesses. We review the record as a whole to determine whether a plaintiff was denied a fair trial. *American Casualty Co v Costello*, 174 Mich App 1, 10-11; 435 NW2d 760 (1989); *Moldovan v Allis Chalmers Mfg Co*, 83 Mich App 373, 380; 268 NW2d 656 (1978).

Plaintiff asserts that the trial court's rulings during his counsel's examination of witnesses and the subsequent criticisms of his method of direct examination, biased the jurors against him.

During the questioning of his first witness, defendant objected that leading questions were being asked. The trial court sustained the objections. After plaintiff's counsel continued to pose questions in the same manner, the jury was excused and a discussion was held off the record. The discussion continued the next day after questioning resumed, again outside the presence of the jury.

We believe that the trial court was incorrect when it determined that all of the questions posed by plaintiff's counsel were leading. Nevertheless, we find that its handling of the situation did not deny plaintiff a fair and impartial trial. *People v Wigfall*, 160 Mich App 765, 773; 408 NW2d 551 (1987). A trial court has broad power to control the manner in which witnesses are examined. *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 415; 516 NW2d 502 (1994).

After carefully reviewing the record, we find that the trial judge did not demean or belittle plaintiff's counsel in such manner as to render the jury biased against plaintiff. It can be seen from the transcripts that the trial judge was frustrated with counsel's continuing attempts to ask questions in a manner she had ruled was leading. However, the lengthy discussion between the trial court and counsel occurred outside the presence of the jury. The court did not berate, scold or demean plaintiff's counsel so as to hold him up to contempt in the eyes of the jury. The balance of impartiality necessary for a fair hearing was not destroyed. *People v Ross*, 181 Mich App 89, 91; 449 NW2d 107 (1989); *Wigfall, supra.*

Plaintiff argues that the jurors' bias was demonstrated in a note they sent to the court listing "eight

demands." While the note mentions "long-winded attorneys," we do not find evidence to suggest it referred to plaintiff's counsel. The trial judge thought the note "cute" and said that the jurors had "a wonderful sense of humor." We also do not find that the verdict in favor of defendant shows bias by the jurors against plaintiff's counsel.

### III

Plaintiff also insists that the court abused its discretion by not allowing him to ask Lund whether, in her opinion, she had appeared younger or older than her chronological age. We find that the judge abused her discretion in disallowing the testimony. Any witness is qualified to testify as to his or her physical observations and opinions formed as a result of them. MRE 701; *People v Grisham*, 125 Mich App 280, 286; 335 NW2d 680 (1983). Although it was error to exclude the evidence, it was harmless. MRE 103(a). Opinions as to how Lund appeared on the day of the accident were elicited from other witnesses. The testimony would have been merely cumulative.

### IV

Plaintiff asserts that the trial court improperly precluded him from cross-examining Mr. Predmore about the metabolization rates of alcohol in the human body. The witness had testified on the subject during direct examination. We find no error. There was extensive cross-examination of Predmore on that subject. The trial court properly restricted plaintiff from cross-examining the witness on this and other subjects, because it exceeded the scope of his direct examination. *Beadle v Allis*, 165 Mich App 516, 522; 418 NW2d 906 (1987).

Plaintiff argues that the trial court abused its discretion by allowing the admission of irrelevant testimony offered to build sympathy for defendant. Plaintiff objected to testimony regarding defendant's background that was brought out on direct examination of defendant. He argues that those questions were intended to demonstrate defendant's poverty. However, we note that the trial court sustained plaintiff's objection when defendant attempted to introduce her financial condition. It was proper for the trial court to allow defendant to answer questions regarding her background, because plaintiff queried her about it first during cross-examination when he called her pursuant to the adverse witness statute. MRE 611. Moreover, the trial court gave the standard jury instruction on sympathy for the purpose of curing any prejudice.

V

Plaintiff also argues that the jury was not properly instructed on the issues of foreseeability and damages. We find that the instructions given to the jury adequately covered the subject matter in the special jury instructions requested by defendant. *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985); *Sells v Monroe Co*, 158 Mich App 637, 649; 405 NW2d 387 (1987).

VI

Plaintiff argues that the trial court erred in awarding attorney fees pursuant to the offer of judgment rule, MCR 2.405.

On January 18, 1991, plaintiff made the following offer of judgment:

[Plaintiff offers to settle for $50,000] which amount is a net sum in addition to any and all credits, reductions and/or setoffs defendant might be entitled to [and] offer is made pursuant to MCR 2.405.

On February 13, 1991 defendant made an offer of judgment for $5,000 with the same provisions as were included in plaintiff's offer of judgment. On February 18, 1991, plaintiff counteroffered to settle, once again for $50,000 with the identical provisions.

Plaintiff argues that the offer of judgment was not a sum certain as required by MCR 2.405(A)(1). It provides:

"Offer" means a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued. If a party has made more than one offer, the most recent offer controls for the purposes of this rule.

We find that the offer of judgment was a sum certain under MCR 2.405(A)(1). The parties were aware that plaintiff's prior settlement with Lund would be applied against any recovery in the suit against defendant. As such, any damage award would have to exceed the settlement amount of $116,926.48 before defendant would be obligated to pay damages to plaintiff. The offer of judgment was clear. It referred to the additional liability to be paid by defendant to settle the matter above and beyond the amount already recovered from Lund. Thus, the offer was a "sum certain" under MCR 2.405(A)(1).

We also note that plaintiff was the one who made the first offer with the language he now calls "vague and nebulous." It is disingenuous to complain that

defendant's offer, which used the identical language, failed to conform to the rules.

Plaintiff's argument that the defendant was not entitled to actual costs because she had not made a counteroffer is likewise without merit. An offeree may not recover actual costs unless a counteroffer was made. MCR 2.405(D)(2). Plaintiff is correct that defendant's offer was not a "counteroffer." MCR 2.405(A)(2). To be a "counteroffer," it must be made within twenty-one days of the opposing party's offer. *Beveridge v Shorecrest Lanes & Lounge, Inc,* 204 Mich App 466, 469-470; 516 NW2d 117 (1994).

However, defendant's document of February 13, was an offer. *Id.* at 470. As such, she was entitled to recover actual costs if the adjusted verdict was less than her offer. MCR 2.405(D)(1); *Beveridge, supra.* This Court has previously concluded that subrule (D)(2), which precludes awarding costs where an offeree fails to make a counteroffer, does not apply where, as here, each party is an offeror. *Beveridge, supra.*

VII

Finally, plaintiff argues that the interest of justice dictates against an award of attorney fees. A grant of fees under MCR 2.405 should be the rule rather than the exception. *Butzer v Camelot Hall Convalescent Centre, Inc (After Remand)*, 201 Mich App 275, 278; 505 NW2d 862 (1993). In *Sanders v Monical Machinery Co,*[1] this Court rejected the plaintiffs' claim that the discretionary language "in the interest of justice" only permits attorney fees in exceptional circum-

---

[1] 163 Mich App 689; 415 NW2d 276 (1987).

stances where there has been bad faith or unreasonable conduct. See *Stamp v Hagerman*, 181 Mich App 332, 339; 448 NW2d 849 (1989). What constitutes "in the interest of justice" must be decided on a case-by-case basis. *Id.*

We note that this Court has ruled that, in the event of a defense verdict rendered in the face of catastrophic damages, attorney fees should not be routinely awarded. *Gudewicz v Matt's Catering, Inc*, 188 Mich App 639, 644-645; 470 NW2d 654 (1991). However, we have not precluded an award of attorney fees in such a case. Under the factual scenario presented here, we cannot find that the trial court abused its discretion in awarding attorney fees. *McCalla v Ellis*, 180 Mich App 372, 387; 446 NW2d 904 (1989). While the injuries were catastrophic, the damages were not necessarily so.

Plaintiff had previously settled with the intoxicated driver for over $116,000. Plaintiff was only entitled to damages which the jury found to exceed that amount. The mediation award in the case was $25,000, a figure which took into account the previous settlement. In addition, the first jury to try the case returned a verdict of only $30,000.[2] Therefore, while there may be cases where the possibility of catastrophic damages might warrant the denial of attorney fees, we cannot find an abuse of discretion in this case.

In light of our disposition of this case, we decline to address the issues raised in defendant's cross-appeal.

Affirmed.

---

[2] This Court reversed the original judgment due to erroneous jury instructions, 182 Mich App 233; 451 NW2d 601 (1990).

D. A. TEEPLE, J., concurred.

O'CONNELL, J. (*concurring.*) I concur in the result only and write separately to address my concern regarding the majority's innovative definition of "diligent inquiry." The majority's conscripted definition of diligent inquiry was arbitrarily torn from an unrelated context and forced to do service in this context. If a definition of diligent inquiry is required, it should be gleaned from the intent of the Legislature when drafting this statute, not lifted part and parcel from an opinion discussing a completely different term of art. Trial judges in future cases should not be required to give this unique definition.